IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GLEN STEWART, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. 3:10-CV-1269-BK |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Pursuant to the parties' consent to proceed before the magistrate judge (Doc. 18), this case has been transferred to the undersigned for final ruling. For the reasons discussed herein, Plaintiff's *Motion for Summary Judgment* (Doc. 28) is **GRANTED**, and Defendant's *Motion for Summary Judgment* (Doc. 29) is **DENIED**.

**I.      BACKGROUND**[1]

**A.      Procedural History**

Glen Stewart (Plaintiff) seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner) denying his claim for Disability Insurance Benefits (DIB) under the Social Security Act. In November 2007, Plaintiff filed for DIB, claiming that he had been disabled since February 1991 due to back pain. (Tr. at 87-91, 154, 159). His application was denied initially and on reconsideration, and Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 46-49, 51-53, 60-61). He personally appeared and

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

1

testified at a hearing held in October 2008. (Tr. at 21). In July 2009, the ALJ issued his decision finding Plaintiff not disabled. (Tr. at 14). In March 2010, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. (Tr. at 3-5). Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g).

**B.     Factual History**

    **1.     Age, Education, and Work Experience**

Plaintiff was 44 years old on the date he was last insured for purposes of receiving DIB. (Tr. at 154). He has one year of college education and past relevant work as a carpenter, painter, and construction worker. (Tr. at 37, 160, 164).

    **2.     Medical Evidence**

Because Plaintiff was last insured for purposes of receiving DIB on December 31, 1992, he must prove that he was disabled before that time. (Tr. at 154). On February 5, 1991, Dr. Jerry Marlin examined Plaintiff, following Plaintiff's job-related injury, for back and leg pain and numbness, with pain radiating down below the left knee. (Tr. at 196). Upon examination, Dr. Marlin noted that Plaintiff could not stand up straight because of his pain, could not flex more than 20 degrees, and his straight leg raise test was positive at 30 degrees. (Tr. at 197). A lumbar myelogram revealed a "significant" defect at the L4/5 level, with a complete underfilling of the L4/5 nerve root sleeve. (Tr. at 197). The myelogram showed evidence of what appeared to be indentation of the thecal sac anteriorly at L3/4 and L4/5, with midline compression opposite the L5 vertebrae. (Tr. at 197). A CT scan also showed evidence of a right-sided extruded fragment at the L4/5 level that went over the L5 vertebrae, with some stenosis (narrowing) of the spinal

canal at the L4/5 level, a disk bulge at L3/4, and a disk herniation at L4/5.[2] (Tr. at 197-98). Plaintiff was noted to be in "significant pain" with restriction of mobility, and surgery was recommended. (Tr. at 198).

Plaintiff had a diskectomy in late March 1991. (Tr. at 200). One week after the surgery, he had excellent strength and his legs felt much better. (Tr. at 200). He did not take his prescription pain medication for part of April 1991, but then on April 24, 1991, Plaintiff returned to Dr. Marlin with complaints of severe back pain that had begun the past Sunday. (Tr. at 202, 207). Plaintiff described burning pain that radiated down the left side of his leg from thigh and ankle, and he could not move in any direction due to the pain. (Tr. at 202). Upon examination, straight leg raise testing was extremely painful at 15 degrees, he had an antalgic gait, and his hamstrings and quadriceps were very weak and rated as 3/5 in strength. (Tr. at 202). A myelogram performed a few days later revealed minor bulging of the L3/4 and L5/S1 disks, and at least slight foraminal stenosis at L5/S1 with hypertrophy (swelling). (Tr. at 205).

April 1991 medical records from Presbyterian Hospital of Dallas indicate that Plaintiff presented with severe back and leg pain as well as headaches. (Tr. at 206). Upon examination, Plaintiff had minimal ability to flex or extend due to pain, "very positive" straight leg raise testing at 30 degrees on the left side, decreased muscle strength in the anterior tibialis (lower leg), extensor hallucis longus (leg muscle), and gastrocnemius (calf muscle), and his sensation was decreased in the L5 and S1 dermatome (skin). (Tr. at 208). A CT indicated that Plaintiff had some structural compression of the thecal sac and a diffuse disk bulge at L4/5. (Tr. at 208).

---

[2] All medical terms were defined with reference to *Stedman's Medical Dictionary* (27th ed), available on Westlaw.

In May 1991, Dr. Marlin noted that Plaintiff was unable to move in any direction more than five or ten degrees, and he recommended conservative treatment and physical therapy. (Tr. at 209). Dr. Marlin further opined that Plaintiff had experienced "settling" from the diskectomy and had some entrapment on a very hypertrophied and degenerative L5/S1 facet joint. (Tr. at 210). Dr. Marlin explained that Plaintiff may require additional surgery to relieve pressure on the L5 nerve root if recommended epidural steroid injections were not helpful. (Tr. at 210). X-rays revealed mild narrowing of the L4/5 disk space and hypertrophy changes of the L5/S1 facet joint on the left. (Tr. at 211).

In June 1991, Dr. Alan Martin examined Plaintiff, noting that his recent MRI revealed severe facet disease at L5/S1 on the left, and Plaintiff complained that physical therapy made his pain worse. (Tr. at 212). Plaintiff had tingling in his left leg, weakness of the extensor hallucis (the muscle producing extension), as well as the evertors (long leg muscles) of the left leg, but the proximal muscles of the left leg were difficult to test because of Plaintiff's severe pain and back spasms. (Tr. at 212-13). Straight leg raising was positive at 45 degrees, cross straight leg raising was positive, and Dr. Martin believed that Plaintiff suffered from lumbar radiculopathy (disorder of the spinal nerve roots) with sensory changes in the L5 dermatome and likely nerve root impingement. (Tr. at 213).

Dr. Martin examined Plaintiff again on June 11, 1991, and recommended physical therapy and, if Plaintiff was unable to do the therapy, a trial of epidural steroids. (Tr. at 214). Dr. Martin explained that Plaintiff continued to have positive straight leg raise testing, with sensory and motor findings in the left leg compatible with a left L5 radiculopathy. (Tr. at 216). In July 1991, Dr. Martin explained that, despite good effort and compliance, Plaintiff had only

4

partially responded to physical therapy and anti-inflammatory medication, and thus sent Plaintiff to another doctor for epidural steroid injections or facet injections. (Tr. at 222).

Dr. Robert F. Haynsworth examined Plaintiff at Dr. Martin's request in August 1991. (Tr. at 225). He noted that Plaintiff had limited flexion and extension, and all motions were noted to be slow and guarded. (Tr. at 225). Straight leg raise testing was impossible to do due to Plaintiff's complaints of pain at only 10 degrees bilaterally. (Tr. at 225). Plaintiff also had decreased sensation around the lateral aspect of both little toes. (Tr. at 225). Dr. Haynsworth opined that Plaintiff possibly had an inflammatory component to his pain that involved the nerve roots as well as facet arthropathy (a disease affecting the joint), and he administered facet and epidural injections in Plaintiff's lower back. (Tr. at 226).

Dr. Martin examined Plaintiff on September 3, 1991, noting that Plaintiff continued to complain of numbness in his legs as well as back pain that radiated down both legs. (Tr. at 224). Plaintiff had equivocally positive straight leg raise testing at 80 degrees. (Tr. at 224). His facet and epidural injections did not help his pain and caused him to have a significant allergic reaction. (Tr. at 224, 231).

Dr. Haynsworth examined Plaintiff again on September 12, 1991, and noted that Plaintiff still had persistent pain in the back and a popping which, when it occurred, caused a burning pain in the groin region bilaterally. (Tr. at 227). Dr. Haynsworth was of the opinion that Plaintiff had either facet syndrome or instability and advised Plaintiff that there was "not much else we can do from a nonsurgical point." (Tr. at 227).

In December 1991, Plaintiff indicated that he had been given large numbers of pain medications, but none of them had really relieved his pain. (Tr. at 228). In January 1992, Dr.

5

Marlin noted that Plaintiff continued to complain of moderately severe back pain that was exacerbated by various movements and positions, including bending forward, sitting, and walking. (Tr. 231). Plaintiff reported that his pain medicine, Indocin, did not provide him with significant relief, he experienced increased pain if he sat for more than 15 minutes, and walking a block and a half caused increasing sensations of weakness and numbness in his legs. (Tr. at 231). Plaintiff's pain was now in both legs, occurred on a daily basis, and radiated down into the ankle in the left leg. Plaintiff reported that he had to look down to see where his foot was because of the numbness. (Tr. at 231). Any movement of Plaintiff's spine caused increasingly severe back pain, rotation was limited to 10-15 degrees in all directions, flexion was limited to 20 degrees, and extension to 10 degrees. (Tr. at 232). Straight leg raise testing remained positive, and atrophy was noted in both Plaintiff's left calf and left hamstrings. (Tr. at 232). He had decreased power in his right leg and entire left leg, with significant weakness of the anterior tibialis. (Tr. at 232). Plaintiff's sensation in his leg and foot was decreased significantly to pinprick. (Tr. at 232). Dr. Marlin opined that Plaintiff had L5 radiculopathy and believed surgery would be required to improve his symptoms. (Tr. at 236).

 A myelogram performed in January 1992 revealed bulging of the annulus at L3/4, L4/5, and L5/S1, as well as mild to moderate osteoarthritic changes in the facet joints at L5/S1 and L4/5. (Tr. at 239). Dr. Marlin noted that there was slight bulging of the discs at the L3/4 and L4/5 levels, and a CT scan showed facet hypertrophy at the medial facet joint complexes, especially at the L5/S1 level. Additionally, he stated that Plaintiff's foramen (perforation through a bone or membrane) and lateral recesses appeared to be slightly narrowed. (Tr. at 241). Based on those findings, Dr. Marlin believed that surgical intervention would not improve Plaintiff's

condition and concluded that Plaintiff was unable to work due to his impairments. (Tr. at 242). On February 24, 1992, Dr. Marlin wrote a letter expressing his opinion that Plaintiff had been unable to work since February 5, 1991. (Tr. at 243). Further, an award letter from the Veteran's Administration noted that, as of March 26, 1991, Plaintiff was 100% disabled. (Tr. at 495).

### 3. Hearing Testimony

At the administrative hearing, the ALJ noted that there was a gap in the medical record from February 1992 through December 31, 1992 (the date Plaintiff was last insured), so he wanted to get as much testimony as possible relating to that period. (Tr. at 23). Plaintiff testified that during the relevant DIB timeframe, he could not bend or stoop to pick something up off the floor or carry over ten pounds, and he had trouble dressing himself and putting on his shoes due to his back pain. (Tr. at 33-34). He tried to fish "every once in awhile," but could only walk for half a block before he had to sit down, and he could not ever stay seated for more than 45 minutes despite taking muscle relaxers and pain pills. (Tr. at 33-35).

### C. The ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of "status post lumbar microscopic diskectomy at L4/3, lumbar back pain, and right lumbar radiculopathy," but this combination of impairments did not meet or medically equal one of the Listings. (Tr. at 14). Therefore, the ALJ found Plaintiff was not disabled under the meaning of the Act. The ALJ found that Plaintiff's statements of pain were not entirely credible because (1) he did not consistently take his medication, (2) he reported that he was capable of walking some, fishing, and grilling food, and (3) he never followed Dr. Marlin's suggestion to have additional surgery. (Tr. at 17). Additionally, the ALJ noted, there were only two medical exhibits for the relevant

7

timeframe and "based on the lack of medical evidence," Plaintiff's impairments could not be said to be so severe that they interfered with his ability to work. (Tr. at 18). The ALJ thus found that Plaintiff had the residual functional capacity (RFC) to do a full range of light work or work that never required lifting in excess of 20 pounds. (Tr. at 18). While the ALJ ruled that Plaintiff could not perform his past relevant work, he concluded that Plaintiff could have performed other work in the national economy during the relevant timeframe. (Tr. at 19).

## II. ANALYSIS

A. **Legal Standards**

    1. **Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The relevant law and regulations governing the determination of disability under the SSI

program are identical to those governing the determination of eligibility under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 n.1 (5th Cir. 1985). Thus, the Court may rely on decisions in both areas, without distinction, in reviewing an ALJ's decision. *Id. passim*.

## 2. Disability Determination

The definition of disability under the Social Security Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Pursuant to 20 C.F.R. § 404.1520(d), if a claimant has an impairment which meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment, the claimant is deemed disabled without consideration of age, education, and work experience.

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and

> residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

### B. <u>Issues for Review</u>

Although the Court need not address all of the issues in reaching a decision in this case, as will be discussed more fully below, the issues Plaintiff presents are as follows:

1. The ALJ's credibility finding is not supported by substantial evidence;

2. The ALJ erred in finding that Plaintiff's impairments were not of Listing level severity;

3. The ALJ failed to properly evaluate the opinion of Plaintiff's treating physician that Plaintiff could not work during the relevant timeframe;

4. The ALJ's RFC finding is not supported by substantial evidence; and

5. The ALJ erred in applying the Medical Vocational Guidelines to reach a finding of not disabled at step five of the sequential evaluation.

### 1. The ALJ's Credibility Finding is not Supported by Substantial Evidence

Plaintiff argues that the ALJ erred by finding Plaintiff's testimony not credible based on (1) Plaintiff's failure to follow up with Dr. Marlin's suggestion for additional surgery, (2) Plaintiff's lack of motivation to work because he was receiving a disability-based VA pension, and (3) the fact that there were only two exhibits in the record that involved the relevant timeframe, when there were more than two exhibits. (Doc. 28-1 at 4-10).

The government responds that the ALJ's finding was supported by substantial evidence because, while Plaintiff complained of pain, he often failed to take his prescription pain medication. (Doc. 29 at 13-14). Further, the government argues that he should have had surgery when Dr. Marlin originally suggested that he do so, and the VA rating is not supported by substantial evidence. (*Id.* at 14-15). Furthermore, Plaintiff was able to engage in some daily activities, including walking, fishing, watching television, and grilling food. (*Id.* at 16-17).

Social Security Ruling 96-3p requires that "the intensity, persistence, and limiting effects of the symptom(s) must be considered along with the objective medical and other evidence in determining whether the impairment or combination of impairments is severe." When the medical signs or laboratory findings show that a claimant has a medically determinable impairment that could reasonably be expected to produce pain, the Commissioner must evaluate the intensity and persistence of the claimant's symptoms by considering the claimant's history, laboratory findings, statements from the claimant, and opinions of physicians. 20 C.F.R. § 404.1529(c).

As an initial matter, it is apparent from the ALJ's description of the evidence that he reviewed all of Plaintiff's medical records, which consisted of two composite exhibits.

Nevertheless, Plaintiff correctly asserts that the ALJ erred in finding that he had failed to follow Dr. Marlin's suggestion for additional surgery. The record reflects that in January 1992, Dr. Marlin did suggest surgery but later that same month, after reviewing a new myelogram, determined that further surgery was not warranted. (Tr. at 236, 242). Further, the ALJ was required to consider Plaintiff's 100% VA disability rating as evidence entitled to persuasive weight, not evidence that negated Plaintiff's motivation to work. *See* 20 C.F.R. § 404.1512(b)(5) (providing that evidence to be considered in determining eligibility for benefits includes "decisions by any governmental or nongovernmental agency about whether you are disabled"); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (noting that determinations of disability by other agencies are not binding, although they are persuasive, and reversing where, *inter alia*, the ALJ had failed to take into account the VA's determination that the claimant had a 100% service-connected disability). Further, while the ALJ found it significant that Plaintiff was not taking his prescription pain medication, Plaintiff told his doctor that the numerous medications he had tried did not relieve his pain. (Tr. at 228).

The last issue raised by Plaintiff is that the ALJ erroneously found his complaints of pain not credible in light of Plaintiff's ability to walk, fish, watch television, and grill food. A claimant's complaints of pain cannot constitute conclusive evidence of disability. Rather, there must be medical findings, which could reasonably be expected to produce the pain. *Owens v. Heckler*, 770 F.2d 1276, 1281 (5th Cir. 1985) (citing 42 U.S.C. § 423(d)(5)(A)). Where the objective medical evidence conflicts with a claimant's subjective complaints of pain, the ALJ does not err in denying benefits. *Id.* at 1281-82. The objective medical evidence must demonstrate the existence of a condition that could reasonably be expected to produce the level

of pain alleged. *Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992).

In this case, Plaintiff offered plenary medical evidence, including objective imaging tests, to support his subjective complaints of pain at the level he alleged. *Id.* The ALJ offered no explanation as to how the objective medical evidence conflicted with or undermined Plaintiff's complaints of pain. *Owens*, 770 F.2d at 1281-82. Plaintiff's ability to walk, "try to" fish "every once in awhile," watch television, and grill food does not undermine the extensive objective medical evidence supporting his complaints that he had pain at the level he alleged. (Tr. at 33). Accordingly, the ALJ's determination that Plaintiff's subjective complaints of pain were not credible is not supported by substantial evidence. *Cf. Owens*, 770 F.2d at 1281-82 (noting that where the objective medical evidence conflicts with a claimant's subjective complaints of pain, the ALJ does not err in denying benefits); *see also Johnson*, 864 F.2d at 343-44 (stating that a finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings).

**2. The ALJ Erred in Finding that Plaintiff's Impairments are Not of Listing Level Severity.**

Plaintiff next argues that the ALJ did not provide any rationale for his finding that Plaintiff's impairments did not meet a Listing and did not even indicate which Listings he considered in making this finding. (Doc. 28-1 at 10-11). Plaintiff claims that he meets Listing 1.04A due to his back problems. (*Id.* at 11).

The government contends that Plaintiff failed to show that his impairments equaled Listing 1.04A, particularly for a consecutive 12-month period, because his post-surgery CT scans, myelogram, X-rays, and MRI showed only minor deviations. (Doc. 29 at 7-9).

A claimant may satisfy his burden of proving disability if he shows that his impairment or impairments meet or equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d). To "meet" a Listing, a disorder must satisfy all of the criteria of the particular Listing, including any relevant criteria in the introduction. 20 C.F.R. § 404.1525(c)(3). Further, to be disabled within the meaning of the Act, an individual must be unable to perform substantial gainful activity by reason of an impairment which "has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 404.1509. Although an ALJ has a duty to analyze Plaintiff's impairments under every applicable Listing, an ALJ's failure to consider a specific listing is harmless if the record shows such Listing is not met. *See Audler v. Astrue*, 501 F.3d 446, 448-49 (5th Cir. 2007). Listing 1.04A, which covers disorders of the spine, requires that a claimant's disorder result in compromise of a nerve root or the spinal cord with evidence of nerve root compression characterized by (1) neuroanatomic distribution of pain, (2) limitation of motion in the spine, (3) motor loss (such as atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and (4) if there is involvement of the lower back, positive straight leg raising test. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04A.

The ALJ's decision that Plaintiff's impairments did not meet or equal any listed impairment is not supported by substantial evidence because Plaintiff met all criteria of Listing 1.04A during the relevant time period. In fact, the ALJ did not make any findings about that Listing or any other Listings in particular. *See Greenspan*, 38 F.3d at 236 (noting that the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present). As to Listing 1.04A, the medical evidence indicates that Plaintiff had a disorder of the spine that

resulted in compression of a nerve root. (Tr. at 208) (noting compression of the thecal sac); (Tr. at 210) (noting that surgery may be required to relieve pressure on the L5 nerve root); (Tr. at 213) (straight leg raise testing suggests nerve root impingement); (Tr. at 216) (sensory and motor findings compatible with left L5 radiculopathy).

Plaintiff's impairments also manifested in a neuroanatomic distribution of pain as required by Listing 1.04A. (Tr. at 202) (pain radiated down the left leg all the way to the ankle); (Tr. at 209) (same); (Tr. at 212) (burning and tingling down the left leg); (Tr. at 225) (describes pain as traveling around left side into the groin and pain down the thigh). Next, Plaintiff's impairments also resulted in a limited range of motion. (Tr. at 202) (cannot move spine in any direction); (Tr. at 207) (minimal ability to flex or extend); (Tr. at 209) (can hardly move more than five or ten degrees in any direction); (Tr. at 225) (limited flexion and extension).

Further, the medical evidence also shows motor loss, as demonstrated by findings of both muscle weakness and atrophy. (Tr. at 197) (4/5 muscle strength in left leg); (Tr. at 202) (hamstrings and quadriceps are "very weak"); (Tr. at 213) (weakness of left leg); (Tr. at 231) (decreased strength and atrophy of the left leg). Next, the medical evidence shows that Plaintiff had sensory loss. (Tr. at 213) (noting alteration to pin-prick and fine touch in left calf and foot); (Tr. at 225) (decreased sensation in both little toes); (Tr. at 230) (numbness down left leg). Finally, Plaintiff has repeatedly demonstrated positive straight leg raise testing, which is required by Listing 1.04 when there is involvement of the lower back. (Tr. at 202, 213, 216, 225, 232).

As to the duration requirement of the Listings, the ALJ also made no specific findings. The record reveals, however, that Plaintiff had a disabling impairment for at least 12 consecutive months. In February 1991, a lumbar myelogram revealed complete underfilling of the L4/5 nerve

root sleeve and indentation of the thecal sac, thus evidencing nerve root compression. (Tr. at 197). Plaintiff also evidenced neuroanatomic distribution of pain in that he complained of pain radiating down his left leg. (Tr. at 196). Next, Plaintiff's range of motion in the spine was limited, his left hamstring was weak, and his deep knee tendon reflex was slightly less than 2, while 2 is considered a normal response. (Tr. at 197); H. KENNETH WALKER, CLINICAL METHODS: THE HISTORY, PHYSICAL, AND LABORATORY EXAMINATIONS, ch. 72, p.1 (1990) (deep tendon reflex grades). Finally, Plaintiff had a positive straight leg raise test at that time. (Tr. at 197).

Eleven months later, Dr. Marlin noted that Plaintiff's myelogram revealed bulging of the annulus (the ring of fibrocartilage and tissue encasing the intervertebral disk), which condition is known to exert pressure on the surrounding nerve roots. (Tr. at 239); SPINE-HEALTH, *Pain Causes and Treatments*, http://www.spine-health.com/glossary/b/bulging-disc (last visited July 5, 2011). Plaintiff had radiating pain in the left leg down into the ankle. (Tr. at 231). Any movement of Plaintiff's spine at all caused increasingly severe back pain, and rotation, flexion, and extension were all greatly limited. (Tr. at 232). Straight leg raise testing remained positive, atrophy was noted in both Plaintiff's left calf and left hamstrings, and he had decreased power in his right leg and entire left leg. (Tr. at 232). Finally, Plaintiff's sensation in his leg and foot was decreased significantly to pinprick. (Tr. at 232).

In late February 1992, one year after Plaintiff's initial medical consultation for back pain, Dr. Marlin opined that Plaintiff had been unable to work since February 5, 1991. (Tr. at 243). Even if the evidence did not establish that Plaintiff's condition lasted for 12 consecutive months, the Court nevertheless finds that his condition could have been expected to last for that long,

16

given the severe and worsening nature of his impairments as of January 1992, which is the last medical evidence in the record that relates to the relevant timeframe. 20 C.F.R. §§ 404.1505(a), 404.1509. *Johnson*, 864 F.2d at 343-44 (stating that a finding of no substantial evidence is appropriate if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings).

Because the Court finds that Plaintiff met Listing 1.04A, the undersigned need not address Plaintiff's remaining arguments relating to RFC and step five of the sequential analysis. The only remaining issue left to decide is whether to reverse and remand for further proceedings before the ALJ, or for an award of benefits as Plaintiff requests.

The fourth sentence of 42 U.S.C. § 405(g) provides that "[t]he [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court, however, may only order that additional evidence be taken "upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989) (quoting 42 U.S.C. § 405(g)). When an ALJ's decision is not supported by substantial evidence, and the uncontroverted evidence clearly establishes that the claimant is entitled to benefits, the case may be remanded with the instruction to make an award of benefits. *See Taylor v. Bowen*, 782 F.2d 1294, 1298-99 (5th Cir. 1986). The record, however, must enable the court to "determine definitively that the claimant is entitled to benefits." *Armstrong v. Astrue*, No. 1:08-CV-045-C, 2009 WL 3029772, *10 (N.D. Tex. Sept. 22, 2009).

In this case, the Commissioner does not claim that there is new evidence that would support a finding that Plaintiff does not meet Listing 1.04A, and there is no information to suggest that such evidence exists. *Pierre*, 884 F.2d at 803. Moreover, as discussed above, the ALJ's decision that Plaintiff did not meet Listing 1.04A is not supported by substantial evidence. *Taylor*, 782 F.2d at 1299. Finally, based on the record before the undersigned, the Court has determined that Plaintiff is definitively entitled to an award of benefits because he met Listing 1.04A during the relevant timeframe. *Armstrong*, 2009 WL 3029772 at *10. Accordingly, the Court will remand this case to the Commissioner for an award of benefits. *See Helton v. Astrue* 2011 WL 1743409, *7 (N.D. Tex. 2011) (recommending reversal for an award of benefits where claimant established that he met a Listing).

### C. Conclusion

For the foregoing reasons, the undersigned **GRANTS** Plaintiff's *Motion for Summary Judgment* (Doc. 28) and **DENIES** Defendant's *Motion for Summary Judgment* (Doc. 29). This case is **REMANDED** to the Commissioner with directions that the application for DIB be granted and for the computation and payment of an award of benefits beginning February 5, 1991 through December 31, 1992.

**SO ORDERED** on July 7, 2011.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE